UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05-cv-142-R

RONALD BARBER and
SARAH LYNN CUNNINGHAM                                                           PLAINTIFFS

v.

LOUISVILLE AND JEFFERSON COUNTY
METROPOLITAN SEWER DISTRICT                                                     DEFENDANT

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Louisville and Jefferson County Metropolitan Sewer District's ("MSD") Motion for Summary Judgment. (Docket #30).  The Plaintiff, Ronald Barber ("Barber") has responded (Docket #45), and MSD has replied to that response (Docket #47).  This matter is now ripe for adjudication.  For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Barber was an employee of Rangaswamy & Associates ("Rangaswamy") who began working as a construction inspector on MSD projects through a contract that Rangaswamy had signed with MSD in 1992.  As a trained engineer, Barber inspected MSD sewer construction projects.  While Barber worked at MSD, he received all direction from MSD supervisors, not Rangaswamy.  In addition, he was trained by MSD on environmental requirements and procedures working on MSD sites.  Barber was responsible for bringing non-conformance to the attention of MSD, as part of the Erosion Prevention and Sediment Control program ("EPSC").  Barber was assigned to specific projects by a MSD supervisor, and reported all problems to someone at MSD.

As part of the EPSC program Barber was supposed to make sure that "fill dirt" (dirt that

was removed from the ground during sewer installation, and must be moved elsewhere), went only to approved sites. Approval required submitting an application, which included properly completed engineering plans to MSD. In addition, people who wanted to obtain fill dirt had to receive a permit before doing so.

From August 2003 through December 2004, Barber was the construction inspector on the MSD Valley Village sewer construction project in southwestern Jefferson County, Kentucky. In December 2003, Barber met Larry Mattingly ("Mattingly"), legislative aide for Louisville Metro Council Member Robert Henderson ("Henderson"). Barber alleges that Mattingly inquired that he wished to receive some fill dirt for his property that he owned. Barber says he told Mattingly that anyone receiving more than two (2) loads of dirt would have to obtain a permit. Barber claims that Mattingly ignored his instructions, and had Reynolds Construction ("Reynolds"), the MSD contractor on the Valley Village project, haul dirt onto Mattingly's property as well as non-permitted sites, including property owned by Henderson. Barber alleges that both Mattingly and Henderson received more than two (2) loads of dirt without a fill permit, and that they began to fill a site with dirt without the proper paperwork. Barber noted these incidents in his daily progress reports, and told his MSD supervisor Frank Walker ("Walker") about these matters. In addition, Barber said that he told Reynolds to cease hauling the dirt onto unauthorized properties.

Barber also alleges that MSD board member William Gray ("Gray") attempted to gain favors from a MSD sewer project in Henderson's Metro District (14). He claims Gray wished to dump dirt from a local church site into neighbors' yards without going through the proper channels. Further, Barber alleges that Gray threatened his job over the church dirt. Barber

2

reported these alleged infractions to Walker at MSD.

Barber later noted that Mattingly eventually obtained a permit, however, Barber believed that the permit was "facially improper." Barber contacted MSD Permit Department employee Larry Pardue ("Pardue") in inquire about the improper permit. Pardue advised Barber not to lose his job over the permit. Barber alleges that by the time Mattingly finally obtained a proper permit, he had obtained thousands of truckloads of illegally dumped fill dirt. During this time, Barber alleges that Henderson threatened Barber's job by telling neighbors in Valley Village that he would get Barber fired.

During the Spring 2004, MSD began preparations for staff reductions. Beginning in 1999, MSD had made two (2) staff reductions prior to 2004. That spring, each executive staff member was asked to submit potential names for job elimination; Derek Guthrie ("Guthrie"), the Director of Engineering at MSD offered Barber. In addition, Guthrie also offered Barber's site supervisor Walker, and Tom Williams ("Williams") who was Walker's supervisor at MSD. Williams had reported to both MSD Executive Director Bud Schardein ("Schardein") and Guthrie that Gray had apparently threatened Barber's job, and that Barber was becoming upset over it. In addition, during the cutback deliberations, both Schardein and Guthrie knew that Barber had alleged that Henderson, Mattingly and Gray had improperly used MSD resources. On December 7, 2004, MSD terminated its contract with Rangaswamy concerning Barber's responsibilities at MSD. On December 8, 2004, Rangaswamy fired Barber. In addition, MSD also terminated Frank Walker and Tom Williams on December 7, 2004.

Barber contends he was terminated for his inquiries into and the reporting of the alleged improper activities by Mattingly, Henderson and Gray, as well as the fact he consulted with

Walker and Co-Plaintiff Sarah Lynn Cunningham ("Cunningham") about his observations at the MSD projects in early May 2004. Cunningham eventually wrote a letter to Commonwealth Attorney General Greg Stumbo ("Attorney General Stumbo") on May 24, 2004, describing to him many of the allegations claimed by Barber concerning the improper use of MSD resources by Mattingly, Henderson and Gray. MSD contends that Barber cannot maintain claims under the Kentucky Whistleblower Act ("KWA") and the First Amendment for retaliation.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary

4

judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Defendant asserts four (4) arguments as to why the Court should grant its motion for summary judgment. These include: (1) Barber was not a public employee, and therefore, his claims against MSD fail as a matter of law; (2) Barber's statements at issue were made pursuant to his official duties, and therefore, fail as a matter of law; (3) the statements made by Barber were not a matter of public concern; and (4) lastly, Barber cannot present evidence linking his termination by Rangaswamy to his alleged protected speech. The Court will address each of these arguments individually.

### 1. Barber as a Public Employee

MSD contends that Barber is not a public employee for purposes of his First Amendment retaliation and KWA claims because he was not an employee of MSD, but was an employee of Rangaswamy. To establish a *prima facie* case of retaliation under the First Amendment, "a public employee who claims that an employment decision was made in retaliation for engaging in protected speech, must show that: (1) 'the plaintiff was engaged in constitutionally protected speech; (2) the plaintiff was subjected to an adverse action or was deprived of some benefit; and

5

(3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action.' *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 896 (6th Cir.2001) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir. 2003).

The Kentucky Whistleblower Act ("KWA"), KRS §61.102, protects state employees from reprisal for reporting information regarding actual or suspected fraud, waste and mismanagement. *Davidson v. Commonwealth*, 152 S.W.3d 247, 249 (Ky. Ct. App. 2004). KWA requires that the employee be a state employee. *Id.* The Kentucky Supreme Court held that an employee must establish four elements to demonstrate a violation of the KWA. *Woodward v. Commonwealth*, 984 S.W.2d 477, 480-81 (Ky.1998). In *Woodward*, the Court explained:

> First, from the context of this chapter, [KRS §61.102], the employer must be an officer of the state or one of its political subdivisions. Second, the employee must be a state employee or an employee of a political subdivision. Third, the employee must make a good faith report of a suspected violation of state or local statute or administrative regulation to an appropriate body or authority. Fourth, the defendant must be shown to act to punish the employee for making this report or to act in such a manner so as to discourage the making of this report.

*Id.*

The Plaintiff asserts that for purposes of his claims he was a public employee because his contract was for the service of MSD and MSD had enough control over him so that it could remove him from his job. Barber cites the Kentucky Supreme Court case of *Cabinet for Families and Children v. Cummings* in support of his argument. *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 429-30 (Ky. 2005). In *Cummings*, the Kentucky Supreme Court held that a university professor who was not a party to a contract between the Urban Studies Institute, which provided him his salary, and the Kentucky Cabinet for Families

6

and Children, which had control over his actions, was a public employee for purposes of KWA, KRS §61.101(1). *Id.* at 429-30. In reaching its determination, the Court noted that:

> Cummings was to report his findings to the Cabinet regularly. In addition, the Cabinet had control over what information was presented to other state agencies, the public, the media, and the Legislature. Cummings's affidavit alleges that the Cabinet dictated the specific details of the manner in which he was to draw the samples, create certain questionnaires, and analyze and interpret the data...Cummings states that he met regularly with Cabinet officials in person and via e-mail, regarding the progress of the research, and that several of his reports were extensively re-written by the Cabinet.

*Id.* In addition, the Court also stated another factor demonstrating that Cummings was an employee for purpose of KWA was the fact that "the Cabinet had enough control over Cummings's work that it was ultimately able to remove him from the study altogether." *Id.* The Court concluded stating "[t]his is a type of situation that we believe the General Assembly envisioned and sought to protect when it enacted the Act." *Id.*

Here, similar to *Cummings*, Barber was to report his findings to MSD on a regular basis. In addition, MSD had control over what jobs Barber would be assigned to as well as his training. Further, Barber often communicated and met with MSD supervisors and personnel to discuss MSD projects. Barber received all of his job assignments from MSD. Ultimately, MSD had control over Barber to remove him from MSD operations altogether, by terminating the contract between Rangaswamy and MSD concerning Barber's job responsibilities. Accordingly, the Court finds that for purposes of his First Amendment and KWA claims, Barber was a public employee with MSD.

### 2. Barber's Statements Made Pursuant to His Official Duties

MSD argues that because part of Barber's job duties required him to be responsible for

bringing non-conformance to the attention of MSD, as part of the EPSC program, his statements qualify as part of his job, and therefore, are not protected speech under the First Amendment. The Defendant asserts that its contention is supported by the recent United States Supreme Court case of *Garcetti v. Ceballos*, where the Supreme Court held that if speech is part of a directed duty of employment, it is not speech made concerning a public matter, and therefore, is not protected by the First Amendment. *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960-61 (2006).

In *Ceballas*, the Court emphasized that part of Ceballos' required job duties as an assistant district attorney involved investigating pending matters and advising his supervisors on them through a memorandum. *Id.* The Court held that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 1960. The Court emphasized that Ceballos did not act as a citizen when he conducted his daily professional activities of writing memos. *Id.*

Here, similar to *Ceballos*, for purposes of the First Amendment claim, Barber acted as an employee and not a citizen when made his daily log reports and other statements to MSD personnel. The Plaintiff admits that part of his job consisted of bringing non-conformance to the attention of MSD. As in *Ceballos*, the statements made by Barber pursuant to his official duties do not constitute protected speech. Accordingly, the Court finds that Barber's First Amendment retaliation claim fails as a matter of law because his statements are not protected speech under

8

the First Amendment.[1]  However, the Plaintiff's claim under KWA does not require that the statements made by Barber qualify as protected speech, and the Defendant has not presented any evidence that KWA requires that speech by a whistleblower fall under First Amendment protection. *See* KRS §61.102; *Woodward*, 984 S.W.2d, 480-81.  As such, the holding in *Ceballos* does not preclude Barber's KWA claim from going forward at this time.

### 3. Barber's Statements as Matters of Public Concern under KWA

MSD contends that the statements made by Barber do not involve matters of public concern.  MSD correctly points out that a KWA claim must involve a disclosure that concerns a public matter. *See Boykins v. Housing Authority of Louisville*, 842 S.W.2d 527, 529 (Ky. 1992). Similar to a First Amendment protected speech case, to demonstrate that he was engaging in speech protected by KWA, Barber must show that his speech touched on matters of public concern.  "The Supreme Court has held that speech addressing a matter of public concern is speech relating to 'any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  By contrast, a public employee's speech dealing with "matters only of personal interest" is generally not afforded constitutional protection. Id. at 147, 103 S.Ct. 1684.

In the instant matter, the statements made by Barber concern matters of public interest.  In contrast to *Boykins*, where the Kentucky Supreme Court held that the employee had only brought

---

[1] The Court notes that in its reply brief the Defendant cited the Sixth Circuit Court of Appeals case of *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986), arguing that the Plaintiff cannot bring a retaliation claim if the adverse employment action took place more than four (4) months after the allegedly protected activity took place.  However, because the Court finds that the Plaintiff's First Amendment claims fails as a matter of law under the holding in *Ceballos*, the Court does not need to address this argument at this juncture.  However, for reference concerning the application of *Cooper* to the instant case, the Court addresses that issue in its Memorandum Opinion in response to the Defendant's Motion for Summary Judgment (Docket #36) in regards to claims asserted by Co-Plaintiff Sarah Lynn Cunningham.

forward "a simple negligence claim," Barber has alleged that Mattingly, Henderson and Gray misappropriated MSD resources for their personal use. *Boykins* at 529. If true, these allegations do not concern Barber individually, but involve claims that relate to political and legal concerns of the community. Accordingly, the Court finds that Barber's statements qualify as matters of public concern.

### 4. Evidence Linking Barber's Termination by Rangaswamy to his Protected Speech

The Defendant asserts that Barber has not presented any evidence that a reasonable jury could find was a contributing factor linking his termination by Rangaswamy to his alleged protected speech. The Defendant further argues that Barber has not demonstrated by a preponderance of the evidence that Barber's statements led to his termination. The Plaintiff correctly notes that in deciding a summary judgment motion, all ambiguities or inferences must be resolved in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Here, the Plaintiff contends that MSD ended its contract with Rangaswamy that involved his job duties and position because of his reports and statements made to Walker, Cunningham and others concerning the alleged improper use of MSD resources by Mattingly, Henderson and Gray. Barber has provided documents supporting his claims through his daily logs as well as deposition testimony. Though the Defendant feels that this evidence is not strong, that does not mean that the claim fails as a matter of law. MSD's argument attacks the weight of the evidence rather than the merits of the claim. Accordingly, the Court finds that MSD's argument fails as a matter of law.

### CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is


**GRANTED in part** and **DENIED in part**.  The Plaintiff's First Amendment retaliation claim against the Defendant fails as a matter of law.  However, the Plaintiff's Kentucky Whistleblower Act claim shall go forward at this time.

      An appropriate order shall issue.

.